UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
TRUSTEES OF THE NORTHEAST
CARPENTERS HEALTH, PENSION,
ANNUITY, APPRENTICESHIP, AND
LABOR MANAGEMENT COOPERATION
FUNDS,

**MEMORANDUM & ORDER**
18-CV-5825 (PKC) (RML)

Petitioner,

- against -

PATRIOT FIELD SERVICES, INC,

Respondent.
------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Petitioner Trustees of the Northeast Carpenters Health, Pension, Annuity, Apprenticeship, and Labor Management Cooperation Funds ("Petitioner" or "Funds") commenced this action on October 18, 2018 against Respondent Patriot Field Services, Inc. ("Respondent") to confirm and enforce an arbitration award rendered pursuant to a collective bargaining agreement ("CBA") between the New England Regional Council of Carpenters (formerly known as the Northeast Regional Council of Carpenters) ("Union") and Respondent. (*See* Petition to Confirm Arbitration Award (the "Petition" or "Pet."), Dkt. 1, ¶ 1.) Petitioner executed a summons and properly served Respondent. (Dkts. 6, 8.) Respondent has failed to enter an appearance, and the time to answer the Petition has expired. Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of Court entered a Certificate of Default on January 23, 2019. (Dkt. 11.) Petitioner moved for default judgment on February 14, 2019. (Dkt. 12.) To date, Respondent has not opposed it. For the reasons stated below, Petitioner's motion is granted in its entirety.

## BACKGROUND

Respondent, a corporation that maintains its principal place of business in Niagara Falls, New York, is a signatory to a CBA with the Union. (Pet., ¶¶ 6, 7.)[1] The CBA required Respondent to make contributions to the Funds for all work within the trade and geographical jurisdiction of the Union. (*Id.* ¶ 8.) Additionally, the CBA provided that "the Employer [(Respondent)] shall be bound by and shall comply with the Trust Agreements, plans and/or rules, policies and regulations of the applicable Funds, including the Funds' Joint Policy for the Collection of Delinquent Contributions" (the "Collection Policy"). (*Id.* ¶ 9.) The Collection Policy requires an employer to submit to a payroll audit upon request by the Funds. (*Id.* ¶ 10.) Additionally, the Collection Policy provides that "the Board of Trustees or Fund Director shall have the discretion in determining which employers will be audited in each year." (*Id.*) Under the Collection Policy, interest on delinquent contributions is calculated at a minimum rate of 0.75% per month, compounded. (*Id.* ¶ 11.) The Collection Policy provides for liquidated damages at a rate of 20% in delinquent contributions to be calculated from the due date of payment that shall become due and owing if suit is commenced. (*Id.* ¶ 12.)

Pursuant to the Collection Policy, Petitioner conducted an audit of Respondent's books and records covering the period from December 1, 2014 through January 11, 2016 in order to determine whether Respondent had complied with its obligations under the CBA. (*Id.* ¶ 13.) An auditor for Petitioner determined that Respondent had failed to remit contributions amounting to $10,907.53. (*Id.* ¶ 14.) Respondent subsequently paid a portion of the amount established by the audit, after

---

[1] The Court accepts as true all factual allegations in the Petition, except those relating to damages. *Trustees of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co.*, No. 07-CV-4211 (NG) (CLP), 2008 WL 4693533, at *5 (E.D.N.Y. Oct. 23, 2008). Any citations to the Petition incorporate by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

2

which Respondent owed contributions of $546.03, interest of $85.91, and liquidated damages amounting to $2,181.51. (*Id.* ¶ 15.) The Collection Policy provided that, in the event that an employer failed to remit contributions to the Funds, the matter would be sent to arbitration before the Funds' designated arbitrator. (*Id.* ¶16.) Moreover, the Collection Policy provided that the employer would be liable for all costs incurred in collecting delinquent contributions, including audit costs and arbitration fees. (*Id.* ¶ 17.)

Petitioner commenced arbitration before the designated arbitrator J.J. Pierson (the "Arbitrator"). (*Id.* ¶ 18.) Petitioner sent to Respondent via certified mail a Notice of Intent to Arbitrate Delinquency. (*Id.*) Thereafter, the Arbitrator held a hearing and rendered an award via written decision on August 17, 2018 (the "Award"). (*Id.* ¶ 19.) Specifically, the Arbitrator determined that Respondent violated the terms of the CBA and ordered Respondent to pay Petitioner $6,735.33 consisting of the balance owed on the audit of $2,813.45, professional fees of $2,271.88, attorneys' fees of $900, and the Arbitrator's fee of $750, all pursuant to the CBA. (*Id.* ¶ 20.) Respondent never complied with its obligations under the Award (*id.* ¶ 21), which has not been vacated or modified to this date (*id.* ¶ 22.)

Thereafter, Petitioner commenced this timely action to enforce the terms of the Award under § 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Petitioner requests that this Court (1) confirm the Award in all respects; (2) grant judgment in favor of Petitioner and against Respondent in the amount of $6,735,33 pursuant to the Award plus interest from the date of the Award through the date of judgment (*i.e.*, pre-judgment interest); (3) award judgment in favor of Petitioner and against Respondent in the amount of $835 in

3

attorneys' fees and costs; and (4) award Petitioner such other and further relief as the Court deems just and proper. (Pet., at ECF[2] 6.)

To date, Respondent has failed to appear, plead, or otherwise respond to the Petition. The applicable time limit for answering or otherwise responding to the Petition has expired, and the Clerk's Certificate of Default was entered on January 23, 2019. (Dkt. 11.) Petitioner filed a motion for default judgment on February 14, 2019. (Petitioner's Motion for Default Judgment, Dkt. 12.) Petitioner also filed a Certificate of Service confirming that a true and correct copy of its motion for default judgment—which consisted of a notice of motion, memorandum of law, declaration, as well as corresponding exhibits—were served upon Respondent. (Dkt. 13-10, at ECF 373.) To date, Respondent has failed to file a response to Petitioner's motion for default judgment.

## DISCUSSION

### I.  Relevant Legal Standards

"[D]efault judgments in confirmation/vacatur proceedings are generally inappropriate." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 136 (2d Cir. 2011) (quotation omitted). Instead, a petition to confirm should be "treated as akin to a motion for summary judgment based on the movant's submissions," and where the non-movant has failed to respond, the court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109–10 (2d Cir. 2006) (quotation omitted).

A motion for summary judgment must be denied unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled

---

[2] "ECF" refers to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

4

to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010). The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all the facts in the light most favorable to the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *El Sayed*, 627 F.3d at 933. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Golden Pac. Bancorp v. Fed. Deposit Ins. Corp.*, 375 F.3d 196, 200 (2d Cir. 2004).

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair & Co.*, 462 F.3d at 110 (quotation and citations omitted). "A court's review of an arbitration award is 'severely limited' so as not to frustrate the goals of arbitration—namely to settle disputes efficiently and avoid long and expensive litigation." *Local 339 United Serv. Workers Union v. Advanced Ready Mix Corp.*, No. 12-CV-4811 (RRM) (VMS), 2013 WL 685447, at *2 (E.D.N.Y. Feb. 24, 2013) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997)).

"[T]he showing required to avoid [summary] confirmation [of an arbitration award] is very high," *D.H. Blair & Co.*, 462 F.3d at 110, and a party moving to vacate an award bears "the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law," *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (quotation omitted). As the Supreme Court has summarized, a party seeking to vacate an arbitrator's decision "must clear a high hurdle." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). "The

5

arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." *D.H. Blair & Co.*, 462 F.3d at 110 (quotations omitted). Under this standard, "[o]nly a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award. *Id.* (quotation omitted).

II. **Confirmation of the Arbitrator's Award**

Under the Federal Arbitration Act ("FAA"), a court "must grant" a petition to confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9. Pursuant to § 10 of the FAA, a court may vacate an arbitration award in four specific situations:

> (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, . . . ; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Section 11 of the FAA enumerates bases for modifying or correcting an arbitration award where a miscalculation has been made. *Id.* § 11. Additionally, "the Second Circuit has recognized an implied basis" for modifying an arbitration award where the award "is in 'manifest disregard' of the law." *In re Arbitration Between Gen. Sec. Nat'l Ins. Co.*, 785 F. Supp. 2d 411, 417 (S.D.N.Y. 2011) (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 339 (2d Cir. 2010)). *See also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) ("Our reluctance over the years to find manifest disregard is a reflection of the fact that it is a doctrine of last resort—its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply.")

With these principles in mind, the Court concludes that Petitioner has met its burden of demonstrating that there is no genuine issue of material fact precluding summary judgment as to all portions of the Award. Petitioner's submissions make it plain that there is no triable issue of fact regarding the Petition. While Respondent did not participate in the arbitration proceedings, it is undisputed that the CBA explicitly required arbitration of grievances raised by the Funds (Declaration of Nicole Marimon ("Marimon Decl."), Dkt. 13, ¶¶ 4–6),[3] and Respondent was served with sufficient notice of the arbitration (*id.* ¶ 15; Dkt. 13-3, at ECF 242.) Moreover, before issuing the Award, the Arbitrator examined the CBA, its arbitration provisions, as well as other materials Petitioner placed before him. (Marimon Decl., ¶ 16; Award, Dkt. 13-4, at ECF 243–47 (noting that the Arbitrator heard testimony and took evidence on Petitioner's claims).) On the evidence, the Arbitrator concluded that Respondent had violated the CBA by failing to make the required payments due thereunder. (Marimon Decl., ¶ 17.) The Award clearly takes as its basis the CBA, which makes it clear that Respondent is liable for the amounts articulated in the Award. (Award, at ECF 244–46.)

Specifically, the Arbitrator appropriately awarded the amount of $6,735.33 to Petitioner. The Arbitrator explained that this amount was calculated by adding the net amount of payment on which Respondent was deficient ($2,813.45) to fees and costs calculated on the original principal delinquency ($2,271.88), plus reasonable attorneys' fees ($900) and the Arbitrator's fee ($750). (Award, at ECF 246.) This math is correct. Moreover, the CBA clearly provided for arbitration of any and all grievances or disputes that arose with respect to the interpretation and application of any of its provisions, and for the awarding of attorneys' and arbitrator's fees necessitated by the

---

[3] Any citations to the Declaration of Nicole Marimon incorporate by reference the documents cited therein. Where relevant, however, the Court may cite directly to the underlying document.

arbitration process. (Marimon Decl., ¶¶ 13–14.) Additionally, the CBA empowered the Arbitrator to enter the Award under the CBA's explicit terms. (CBA, Dkt. 13-1, at ECF 159–60.) Given the deferential standard of review that this Court is required to apply to final decisions by arbitrators, the Court is impelled to confirm the Award. *See N.Y.C. Dist. Council of Carpenters Pension Fund v. Star Intercom & Constr., Inc.*, No. 11-CV-3015 (RJH), 2011 WL 5103349, at *4 (S.D.N.Y. Oct. 27, 2011) ("courts are not authorized to review an arbitrator's decisions on the merits even in the face of allegations—allegations that have not been made in this case—that the decision rests on factual errors or misinterprets the parties' agreement" (quotations and brackets omitted)).

### III. Attorneys' Fees and Costs

Section 502(g) of ERISA provides the Court with discretion to award reasonable attorneys' fees and costs to either party. 29 U.S.C. § 1132(g)(1). Additionally, it provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan and in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph A), (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems proper.

*Id.* § 1132(g)(2). Because the Funds encompass multiple trust funds covered by ERISA, Petitioner is entitled to attorneys' fees and costs it incurred by bringing this action. *See N.Y. State Teamsters Conference Pension & Ret. Fund v. Boening Bros., Inc.*, 92 F.3d 127, 135 (2d Cir. 1996).

Petitioner has submitted documents to the Court establishing that it paid for the services of counsel at the rate of $225 per hour and for the services of legal assistants at a rate of $100 per hour. (Marimon Decl., ¶¶ 26–27.) The Court determines that these rates are appropriate. *See Bennett v. Asset Recovery Solutions, LLC*, No. 14-CV-4433 (DRH) (SIL), 2017 WL 432892, at *7

("Courts in the Eastern District of New York regularly approve hourly rates ranging from $200 to $450 per hour for partners, $100 to $300 per hour for associates, and $70 to $100 per hour for paralegals."); *Gesualdi v. Giacomelli Tile Inc.*, No. 09-CV-0711 (JS), 2010 WL 1049262, at *3 (E.D.N.Y. Mar. 18, 2010) ("the range of appropriate billing rates is $200–$350 per hour for partners and $100–$295 per hour for associates"). Petitioner has submitted documents establishing that it expended $1,242.50 on attorneys' fees and $477.72 on other costs related to the litigation. (Dkt 13-8, at ECF 370–71.) The Court finds these figures credible and so will award them to Petitioner and against Respondent.

## CONCLUSION

For the reasons stated above, the Court grants Petitioner's motion for default judgment against Respondent. The Court orders that Petitioner be awarded $6,735.33 as provided by the Arbitrator's Award, $1,242.50 in attorneys' fees, and $477.72 for other costs. Petitioner is thus entitled to $8,455.55 from Respondent in total. The Clerk of Court is respectfully directed to enter judgment in Petitioner's favor and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 25, 2019
　　　　Brooklyn, New York